We will now move to Case 22-2825, Jason Burns v. Sherwin-Williams Company. We will hear first from Mr. Kelleher. May it please the Court, I'm Tom Kelleher for plaintiff Jason Burns. You know the facts of the case, I'll just start out with deliberate encounter exception and I think the District Court's focus in my opinion was a little flawed in terms of focusing sort of specifically and minutely on the exact location of where this danger was and I think that really what should have been considered is that Jason Burns as part of his job responsibilities was to deliberately encounter this working dock loading area and then the question becomes was that working dock loading area safe and I think factually there's been evidence to present that it was not. Would it have been safe however if he had backed out instead of tried the why term? I don't think that makes it safe. I think what you're suggesting is quite frankly what the District Court did which was focus on almost solely on the plaintiff's conduct rather than focusing on the defendant's conduct both for the deliberate encounter exception as well as the four-factor duty test. The focus is on the defendant. It's not on the plaintiff. The focus is on what the defendant should have anticipated. At page five of our primary brief there's an exhibit nine which is a photograph taken immediately after this incident and in the photograph to the far right you can see a portion of Mr. Burns' truck, it was a tractor-trailer. You can see the walkie. You can see the oversized flat-laying pallets. Mr. Bohina for Sherwin-Williams testified that those flat-laying pallets were about three to four feet from this white concrete apron that sloped up into the warehouse area. And you can also see to the right of the blue dumpster one of the loaded pallets which Mr. Burns had testified that was the last pallet that he took off his truck. The point is when you look at this photograph it shows a loading dock work area in and around this blue dumpster certainly encompassing the area where these oversized pallets were laying on the ground. Mr. Kelleher, can I ask you a question regarding the expert testimony? Can you get to a jury here without expert testimony? On the pallets issue, yes. How so? Just by the nature of where the pallet was laying that would be your argument? So you couldn't get to a jury related to the machine, to the forklift, to the plugging and that. You can't get to a jury on that issue but only on the open and obvious issue with the pallets, location of the pallets. I can get to the jury on that. I would suggest that it becomes a difficult task for me because the defendant has two This area where the pallets were was not the dock area or the loading dock area in large part. That's a subject of expert opinion, the scope of the dock area? Yes. Okay. Yes. And I in part lay that out in terms of why I think Mr. Ferroni, plaintiff's expert at a minimum, you know, should be able to testify in terms of the scope and breadth of the working loading dock area. Where is that in his expert report? I don't have an exact page number for that. Okay. I will tell you that. I know it's in there and in fact he, it's also in his deposition testimony in terms. Okay. Yeah, I only see one paragraph, paragraph 11. But anyway, I just wanted to know if there was any more. His expert report is kind of thin. Sure. Okay. With respect to the forklift, what's your theory? In terms of the... Not a design defect? Not a manufacturing defect? Is there, are you saying it was a maintenance defect? Well, I'm not identifying the particular defect and I don't think it's required. I mean, this is not a product's liability case. Right. So, what's the theory? The theory is that the forklift, regardless of what the cause was, was not operating safely. Just unsuitable for the job. True. Okay. Your expert, you say, performed only one test, number 12, that tried to mimic the accident, quote, in part. Why only in part with respect to speed, load, incline, and the use of so-called plugging versus braking? Without trying to replicate the accident. Are you asking me why only one test? Why only one test that tried to mimic and that only in part, as opposed to what I would expect from an expert, a best effort to reconstruct the accident. First of all, there were more than one test. I know. Okay. But you told us only one of them was intended to mimic the accident and that only in part. Well, that's not entirely true. There were a number of tests that were designed to mimic the accident. But only one of—I mentioned only one of those tests because it's only one of those tests that comes back with what Mr. Ferroni felt was an unusually long stopping distance. And why it was only mimicked in part was there was concern for injury for the individual that was operating the walkie forklift because we didn't want the same thing to happen to him that had happened to Mr. Burns. So, you know, we designed it so— You're saying you couldn't reconstruct the accident without having the pallet in place that caused the injury? Well, what we had tried to do was get the—I mean, we were concerned about both the pallets as well as the actual blue dumpster itself, which, you know, we were not in a position to move it. We tried to arrange for the blue dumpster to be moved elsewhere or farther away, but we were unable to do that. So that's why that testing was only in part. Okay. You know, in terms of the district court's analysis, again, I think, and I played this out in the brief somewhat, there's a focus on the plaintiff's conduct versus the defendant's conduct. And that's—I mean, all of the Illinois case law makes clear that that is not the case. It's to be on the plaintiff's— Mr. Kelleher, I thought your point was a little sharper than that, that the district court here seems to have thought that the deliberate encounter exception is available only if there was no other possibility. And you cite to us the Rawls case and Lefevre. We've also got the Morrissey case in which the Illinois appellate courts and Supreme Court have repeatedly rejected that point. Correct? That's correct, Judge. I think— So it's not just look at the plaintiff versus look at the defendant. It's contrary to that case law on that specific point that appeared critical to the district court's reasoning. Agreed. And, you know, I would only sort of reiterate that there was a number of issues. As you point out, that's probably the most significant one. Illinois law isn't—there's no other choice. The focus is on the defendant's conduct, not the plaintiff's conduct. There were other requirements that the district court seemed to create such as, you know, that the plaintiff wasn't in a rush or didn't feel pressured. That's not a requirement under Illinois law that they—that Jason Burns didn't specifically ask for assistance to either in operating the walkie or removing the pallets again. That's not a requirement. Does it matter for our analysis if the case is framed as premises liability versus ordinary negligence? I don't believe so. I mean, one, I think this is a perfect example of an ordinary negligence case because the testimony is that it was actually the defendant, Sherwin Williams, that positioned and placed these flat-laying pallets in the position that they were, flat, laying on the ground in front of the blue dumpster, especially when that's contrasted with their employee, Mahina, who testifies that, routinely, I put it on the other side of the dumpster away from the loading dock area because we're not to have trip-fall hazards in that area, and I want to keep it as far away as possible from where these workers, both staff for Sherwin Williams, the defendant, as well as the drivers, are doing their work. But from a trial attorney standpoint, the straight negligence case is much easier. I mean, there's more of a burden for the jury instructions for a premises liability case, but the point is that under both duties, the four-factor duty analysis is used, and the deliberate encounter and open and obvious would still apply as an issue, and because it would still apply, you would still consider the deliberate encounter exception. I'd like to reserve if I could. Very good. You will reserve the remainder of your time. Thank you, Mr. Kelleher. We're now going to move to Mr. Jacksons. Thank you, and may it please the Court. My name is Pete Jacksons, and I represent the appellee, Sherwin Williams, and I want to start with the Court's question about whether or not the plaintiff in this case can get to a jury without an expert, and the answer is no because the pallets that Mr. Burns encountered on the incident date were open and obvious, and it would be one thing if you were operating some sort of a defective forklift that pushed him into the pallets, but there's no evidence of that because there's no expert that says that, and so we have Mr. Burns coming out of this warehouse with a perfectly well-operating forklift by all accounts, including the account of the plaintiff's expert when you drill right down to it, and basically no excuse for him encountering these pallets that are open and obvious. There was also a question about the plaintiff's theory as to this particular forklift by the Court, and as I understood the appellant's response was that it was unsuitable. My understanding of what the plaintiff's expert testified to in his report and his deposition was not that this was the wrong machine, but that this was a dangerous machine because it didn't stop short enough. So the plaintiff's theory through the expert is not that this was an unsuitable machine. It was the right machine, just it was a dangerous one, and of course there's no evidence of that. Mr. Jackson, can I ask you to address the Rawls case? Yes. Which you did not mention in your briefs. The Rawls case, while it is not a deliberate encounter exception case, in fact it does not discuss the deliberate encounter exception head-on, it does stand for the proposition. It was discussing Lefevre, correct? Yes. So what do you think it was talking about? My understanding of the Rawls case is it was analyzing the four-part duty analysis. But in response to the Court's question, it does stand for the proposition that if you have, as a plaintiff, if you have two options, right, and one is the dangerous option and one is the really lousy option, that in that case it may be incumbent upon the possessor of land to anticipate that people will choose the dangerous option rather than go all the way around the block. Sounds a lot to me like a deliberate encounter case. It is very similar to a deliberate encounter case. My only point was it doesn't say deliberate encounter specifically in the case. And so you don't think it teaches us anything about this case? I think it teaches something about the case. It does indeed stand for the proposition that when faced with a really lousy option and a dangerous option, that there are circumstances where the possessor is obligated or there's a duty to anticipate that people may do the dangerous option. And so the district court here certainly seems to have written in terms of saying deliberate encounter is available only if you were required to take the action that you took, right? There is language in the district court opinion to that effect. And that's contrary to Lefevre, it's contrary to Rawls, and it's contrary to a case that's not in the briefs, I don't believe, Morrissey against Arlington Park Racecourse that you may be familiar with. Yes. So that sounds like a just flat-out legal error. Although the district court uses that language, and there are other cases that use more strident language than Rawls. You've said, well, okay, go ahead. I don't think that's this case, right? I don't think that the facts we have in the Burns case is a lousy option versus a dangerous option, right? We have a myriad of other ways that Mr. Burns could have avoided this particular accident, starting with the fact that he could have simply said no when Mr. Behena said, can you go and take over this unloading by yourself? You should have turned down your client's, his customer's request. That would have been a possibility, yes. He could have also, when he came out of the warehouse, and if you look, just referring the court to the picture at the appendix at 6A, which is the plaintiff's reconstruction of the incident and shows how Mr. Burns backed the forklift out of the warehouse. The plaintiff's expert testified that the forklift is set up and it is an absolutely good option to pull the handle down and walk the forklift out forward. So that is yet another thing that Mr. Burns could have done to avoid this accident. And Mr. Burns could have chosen another route that didn't involve going right into those pallets right by the dumpster. There's the whole rest of the parking area that doesn't involve pallets where Mr. Burns could have driven that forklift. And the district court correctly pointed out that he could have gone, I think it's to the... It looks like there's a lot less stuff in the area in Exhibit 10 than there was in Exhibit 9 taken at the actual time of the accident, right? It does, but the picture at the time of the accident is zoomed in on those pallets where the picture... Oh, but also, I mean, there's the truck there, the pallets are there, and there's another one of them compared to Exhibit 10 and so on. Okay. All right, thanks. He could have also just not gone as far to that side. He could have stopped sooner. That's another way he could have avoided the accident. And that's actually what he tried to do. He just miscalculated where he was in relation to the pallets and how quickly it would take to stop the machine. And the reason I say this case is not the Rawls case, this is not a case between a lousy option and a dangerous option, is because of all these different ways. And even when you focus... It's interesting, we've been talking about whether we focus on the plaintiff or the defendant, and the test indeed focuses on what the defendant should have anticipated. Why isn't that a jury question? Given... I mean, what you were just making sounded to me like a pretty good jury argument about these other options available and so on, but Rawls and Lefevre and Morrissey seem to point us in the direction of letting a jury consider that. Because given the multiple other options that Mr. Burns had when driving that forklift out of the warehouse, options, by the way, that are consistent with his training, training he received, Mr. Burns, it's undisputed, was trained to look in the direction of the travel when he's operating the forklift. Based on the record in this case, there is no way that Sherwin-Williams could have anticipated that a reasonable person, and that's the test, in Mr. Burns' position, would disregard his own training, ignore multiple other safer options and better routes, and somehow, in the whole parking lot, find the pallets while he's unloading that truck. There's just no evidence in the record that Sherwin-Williams could have or should have or had a duty to anticipate that that would happen. Mr. Jackson, let me ask you a question. Forget the pallets for a minute. What if the plaintiff here was backing the forklift up and he tripped over the little wheel on the dumpster? Does that make sense? You know, the dumpster's sitting there, right? And the dumpster has little wheels in front that turn. I mean, they rotate. So, a wheel could be protruding out. You know what I'm talking about, right? If there's no pallet at all, he's walking backwards and runs into the dumpster and trips over that little wheel that was sticking out and sprains his ankle. Does he have a negligence suit against Sherwin-Williams? I don't think so because I think the dumpster is just as open and obvious as the pallets and the pallets are just as open and obvious as the dumpster. So, even under Rawls, I guess your argument would be the same, that he should have just, he saw the dumpster, he should have just backed the forklift out the other direction. In other words, what I'm getting at is Sherwin-Williams had to put the dumpster somewhere in its property, right? It couldn't just put the dumpster on the street. Right. And he had to avoid the dumpster, I suppose, is your argument, in the same way that he should have avoided the pallets. That's correct. That's correct. And it's not just that he could have gone another way. He could have, if he had been walking and looking in the direction of travel, he would have known to stop sooner. And if he was, if he had used the brake, for example, on the forklift instead of using the plugging mechanism, right? Because there are two ways to stop this forklift. You can plug it, which is essentially, as it's going backwards, you move the accelerator to the forward position and it sort of stops gradually and then starts going in the opposite direction. Or you can use the brake, which stops it. And so using the brake versus using the plugging mechanism is yet another option Mr. Burns had. Mr. Jackson, same question I asked Mr. Kelleher. Does it matter for our analysis whether the case is framed as premises liability or ordinary negligence? It does not because the open and obvious doctrine bars the claim as to both equally. In my remaining time, I just want to highlight a couple of facts. There's no question in the record that the plaintiff knew about the pallets as he approached them. And this goes to what kind of really happened that day. There's no question, based on the record, that as Mr. Burns was approaching the pallets, fully aware that they were there, he made an estimation about how far away they were and, based on that estimation, began his plugging of the walkie to get it going in the opposite direction. All that happened in this case is that he just misestimated that or guessed wrong, and it didn't stop quickly enough. And he engaged the brake too late. He just miscalculated. There was no hidden danger. There was nothing he didn't know. Including these other routes, he just chose this one. And as it relates to the plaintiff's expert and the Daubert analysis, the plaintiff's expert runs this forklift through 12 different tests. In each and every one of those tests, to be very clear, the forklift stopped while plugging it within the distance set in the owner's manual that it should stop even when you use the brake. 68 inches. Yes. And so the plaintiff's expert, based on his testing, confirmed that the forklift performed as expected or better than expected and confirmed the absence of any defect in the forklift. And then the expert jumps from that testing and that data somehow to the conclusion that the forklift is dangerous because it doesn't stop quick enough. And, of course, that doesn't satisfy Daubert because there's no connection at that point between the data and the testing and the conclusion. In fact, they're completely disconnected. They're the opposite. And so the only thing that connects the data or anything and the expert's conclusion that the forklift was dangerous was the ipsedixit of the expert. And, of course, Daubert won't let him do that and renders that inadmissible. And unless there are any further questions, those are my arguments this morning. Thank you, Mr. Jackson. Thank you very much. We'll move Mr. Gallagher back to you for rebuttal. So esteemed defense counsel just made a great closing argument regarding contributory negligence, and it's exactly the same thing that the district court did in this case. By focusing all of these things that, you know, on this particular occasion, on the specifics about how this injury occurred, criticizing, in some respect, rightly so, plaintiff for doing certain things and not doing certain things, it's essentially an argument at closing for contributory and comparative negligence and nothing more. It's not consistent with any of the Illinois case law when you're trying to establish or determine duty either under deliberate encounter exception or the four-factor duty test. And, you know, the district court sort of danced around this a little bit by, you know, creating other burdens. But defense counsel today and in his brief makes it clear they're taking the position that if a defect is open and obvious, that's the end of it. That's determinative, you know, as an absolute issue. Well, he says not exactly. He says the deliberate encounter exception is not available, the district court made clear, if there is another available option, right? That's what the district court said. Well, that's what the district court says. Right. We know what Illinois law says. Yeah. I would say particularly when the person who's injured is at work and is trying to carry out his or her job. Right. I understand that we've got the Clybur case and some other circumstances that it gets a little fuzzier. And even in those, you know, the customer cases versus the worker cases. In the worker cases, they specifically talk about this economic compulsion for these workers to get their job done and, you know, typically in a timely manner. That's not the case in these customer cases. And, in fact, a lot of the cases, Clybur's a good example of that, specifically state that. This is not an economic compulsion case. I would also say that the factual evidence in this case indicates that plaintiff was required to take that forklift out of this sort of very crowded stock room, which was becoming more and more crowded because they were putting in loaded product in there. And even the employee, Bahina, the last couple of times he had loaded before he passed it on to Mr. Murphy, Mr. Burns, I'm sorry, had to do the exact same thing, back out with the walkie forklift. And, again, the defendant is not being asked to predict the particular circumstance of this incident. What they're asked to have an appreciation for and anticipation for is because you have a danger, flat-laying pallets, is that going to create a likely possibility of injury or harm to workers who are not only backing out of the stock room but are loading trucks, unloading trucks, taking pallets with the walkie, maneuvering around this very area, having to back up in various ways. And it's really the focus of the four-duty test, as well as the deliberate encounter test, is to make sure from a public policy standpoint that these workplace environments are kept as safe as possible. And the evidence is that was not done in this case, and certainly there should have been a duty. Thank you, Mr. Kelleher. Thank you, Mr. Jackson. The case will be taken in order of advisement.